FILED

April 17 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0405

DA 14-0405

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 107

GEORGE THAYER GLUECKERT, SR.,
and LAURA JEANNE GLUECKERT,

      Petitioners and Appellants,

   v.

KRISTIN GLUECKERT,

      Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. CDR 2013-702
                Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Robyn L. Weber, Attorney at Law, Helena, Montana

      For Appellee:

          Katharine Donnelley, Attorney at Law, Helena, Montana

                             Submitted on Briefs:  March 4, 2015
                                     Decided:  April 17, 2015

Filed:

                                 _____
                                       Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    George and Laura Glueckert (Glueckerts) appeal from the District Court's Findings of Fact, Conclusions of Law and Order, filed October 7, 2014.  We affirm.

¶2    We restate the issue on appeal as whether the District Court properly applied § 40-9-102, MCA, in denying the Glueckerts' petition for extended contact with their grandson.

## BACKGROUND

¶3    The Glueckerts' son Thayer was married to the respondent Kristin Glueckert. Thayer and Kristin had a son, M.T., who is the Glueckerts' grandson.  At the time the petition was filed in November 2013, Thayer was serving on active duty in the military and was stationed outside of Montana.  Thayer and Kristin had separated but the divorce was not completed and there was no parenting plan in place.  M.T. has lived with his mother Kristin since his birth in April 2013 and Thayer has only had physical contact with him when home on leave.

¶4    The Glueckerts sought to negotiate with Kristin for regular visitation with their grandson.  Kristin agreed to contact and on a number of occasions provided a one-hour visit in her residence with her present, but she would generally not allow the Glueckerts to have unsupervised visits with M.T.  Most of their unsupervised visits with M.T. outside of Kristin's home have occurred when Thayer is home on leave.

¶5    The Glueckerts' petition under § 40-9-102, MCA, sought four three-hour unsupervised visits per week with M.T., and additional unsupervised visits on special

occasions during the year.  Kristin objected to any additional visitation beyond the contact she had provided, and objected to any unsupervised visitation.  Kristin does not agree with the Glueckerts on subjects that are important to her, such as corporal punishment, views on homosexuality and the way they treat other family members.  She and the Glueckerts do not have a good relationship, and the relationship is more strained because of the dispute over visitation.

¶6     At the time of the District Court's decision Kristin was planning to move to Idaho to complete training in radiography.  She was willing to allow the Glueckerts to come to Idaho to visit M.T. in supervised sessions.

¶7     In May 2014 the District Court held a hearing on the merits of the petition, and subsequently granted Kristin's motion for summary judgment.  The District Court found that since Kristin allows visits with M.T., the issue was whether visitation should be regular and unsupervised.  The District Court found that Kristin is a fit parent and that the Glueckerts are capable loving grandparents who are able to meet M.T.'s needs.  The District Court found that the Glueckerts have a 'well-reasoned and sensible" position that they want to enhance their bond with M.T., but that the clear and convincing evidence required by § 40-9-102, MCA, requires "substantially more" to overcome the statutory presumption in favor of supporting the wishes of a fit parent.  The District Court denied the petition for additional contact and the Glueckerts appeal.

**STANDARD OF REVIEW**

¶8     A district court's interpretation of a statute is a conclusion of law which we review for correctness.  *Montana State Fund v. Simms,* 2012 MT 22, ¶ 15, 364 Mont. 14, 270

P.3d 64. We review a district court's findings of fact to determine whether they are clearly erroneous. *Brimstone Mining, Inc. v. Glaus*, 2003 MT 236, ¶ 20, 317 Mont. 236, 77 P.3d 175. This Court reviews a district court's decision on summary judgment to determine whether it is correct, using the same criteria under Rule 56, M. R. Civ. P. *Pilgeram v. GreenPoint Mortgage*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839.

## DISCUSSION

¶9 *Issue: Whether the District Court properly applied § 40-9-102, MCA, in denying the Glueckerts' petition for extended contact with their grandson.*

¶10 The Legislature has adopted statutes providing for grandparent-grandchild contact, §§ 40-9-101 to -103, MCA. This Court recently summarized application of those provisions:

> The Court is required to make a determination as to whether the objecting parent is a fit parent, that is, whether the parent adequately cares for the child. Section 40-9-102(2), MCA. Contact may be granted over a fit parent's objections if clear and convincing evidence establishes that the contact would be in the best interest of the child and the presumption in favor of the parent's wishes has been rebutted.

*In re Gardner v. Gardner*, 2014 MT 290, ¶ 12, 376 Mont. 540, 337 P.3d 751, citing § 40-9-102(4), MCA, and *Polasek* v. *Omura*, 2006 MT 103, ¶ 15, 332 Mont. 157, 136 P.3d 519. If a fit parent objects to any aspect of the contact sought by the grandparents, there is a presumption in favor of complying with the parent's wishes and the grandparents have the burden to supply evidence to overcome that presumption. *Gardner*, ¶ 19; *Polasek*, ¶ 15. Clear and convincing evidence is more than a mere preponderance of the evidence, and requires evidence that is definite, clear and

4

convincing. It does not mean unanswerable or conclusive evidence or evidence beyond a reasonable doubt. *Thibodeau v. Bechtold,* 2008 MT 412, ¶ 23, 347 Mont. 277, 198 P.3d 785.

¶11 A parent retains a fundamental right to make decisions concerning her child's care, custody and control. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000); *In re Snyder v. Spalding*, 2010 MT 151, ¶ 19, 357 Mont. 34, 235 P.3d 578. The best interest of the child remains intact as the standard by which a grandparent's request for contact must be judged. *Snyder*, ¶ 17.

¶12 On appeal Kristin argues that she allowed only the limited visits because of her knowledge of the Glueckerts' "actions and beliefs" and her determination that limiting contact is in the best interest of her child. She points to George's expressed belief that all homosexuals would go to hell; to George's calling members of his wife's family fat and lazy; and to the way both Glueckerts gossiped about others. She is concerned that the Glueckerts would disparage her and her family to M.T. if they were alone with him, and she is concerned about their beliefs on corporal punishment. Kristin felt she was betrayed by Laura during a fight Kristin had with Thayer during one of his visits to Helena. Kristin points out that she has limited resources and that responding to the Glueckerts' petition has been financially and emotionally difficult for her. Kristin points out that she continued to offer visits with M.T. at her residence, even after the Glueckerts filed the petition, and that she would allow supervised visits if she moved to Idaho. Kristin states that she believes that it is important for M.T. to have a relationship with his grandparents but that her restrictions are in his best interest.

¶13 The Glueckerts acknowledge that Kristin is a fit parent and that she allowed them to have contact with M.T. They assert that the crux of the issue on appeal is the nature and extent of their contact with M.T., and whether the District Court properly considered the best interest of the child. They contend that Kristin's stated reasons for limiting their contact to supervised visits were frivolous and inconsistent and that the limited visits that Kristin allowed were tense and strained because Kristin insisted on watching,** They argue that the District Court failed to follow the statute because it did not expressly determine what was in the best interest of M.T. The Glueckerts also acknowledge that "soon" there will be a parenting plan in place for M.T. as between Kristin and Thayer, and that they will "undoubtedly" share additional unsupervised visitation with M.T. during Thayer's parenting times.

¶14 To establish a statutory right to "reasonable" contact, § 40-9-102(1), MCA, grandparents must overcome the express preference in favor of a fit parent's wishes by clear and convincing evidence showing that what they want is in the best interest of the child. *In re Gardner*, ¶ 12. Here the District Court found that the Glueckerts had not met the standard necessary to overcome the preference for Kristin's wishes. Kristin had accommodated visits, but on her terms. The Glueckerts do not like the contact that Kristin allowed, and they do not respect Kristin's stated reasons for limiting their contact with M.T. However, Kristin has a "fundamental liberty interest" to make decisions concerning the care and custody of her child. *Snyder*, ¶ 13. There is a presumption in Montana law that Kristin's wishes, as a fit parent, should be respected. Section 40-9-102(4), MCA; *Gardner*, ¶ 12. There is a requirement that only a showing meeting

6

the standard of clear and convincing evidence can overcome the presumption in favor of the wishes of a fit parent. Section 40-9-102(3), MCA.

¶15 The District Court held the hearing, received the testimony, observed the witnesses, and is in the best position to weigh the evidence. The Glueckerts contend that the District Court failed to comply with § 40-9-102(4), MCA, by not providing an express analysis of the best interest of the child. However, it is clear that the District Court knew and quoted the proper statutory standard. Before the Glueckerts would be entitled to extended contact under the statute, they were required to show that contact would be in the best interest of the child *and* that the presumption in favor of Kristin's wishes was overcome by clear and convincing evidence. Section 40-9-102(4), MCA. The District Court determined that they failed to overcome the presumption in favor of the fit parent, so no further analysis was required. *Gardner*, ¶ 12. The District Court's findings on the evidence were not clearly erroneous.

¶16 While the District Court did not engage in a separate analysis of the best interest of M.T., the Glueckerts did not show, by clear and convincing evidence, that their goal of maintaining a bond between MT. and their side of the family with more unsupervised visits will materially suffer without the greatly expanded visitation they desire.[1] The statute requires that grandparents must demonstrate what is in the best interest of the child and must provide clear and convincing evidence to rebut the presumption in favor of the fit parent. This Court does not disagree with the District Court's conclusion that

---

[1] In addition, the Glueckerts acknowledge that they fully expect to have greatly increased unsupervised contact with M.T., after Thayer finishes his enlistment with the military.

7

they had not produced clear and convincing evidence that there should be a different result.

¶17 Given our disposition of this case, it is unnecessary to address Glueckerts' argument concerning setting a specific visitation schedule.

¶18 The District Court is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT

Justice Jim Rice, concurring in part and dissenting in part.

¶19 I believe the Court has properly answered the issues raised by the Glueckerts regarding the interpretation of the grandparent visitation statute, but I disagree with the application of the statute to the evidence in this case.

¶20 The District Court's order did not provide an analysis of the child's best interest, but that would be reversible error only if it had first concluded that the presumption in favor of Kristin's wishes, as a fit parent, had been overcome by the evidence. *See In re Gardner*, ¶ 12 ("Contact may be granted over a fit parent's objections, if clear and convincing evidence establishes that the contact would be in the best interest of the child and the presumption in favor of the parent's wishes has been rebutted."). The Court here explains *In re Gardner* clarified that "*any aspect* of the contact sought by the grandparents" must be tested against both the presumption in favor of a fit parent's

8

wishes and then the best interests of the child. Opinion, ¶ 10 (emphasis added). Thus, it would be unnecessary for a district court to analyze the best interest issue if it concluded that the presumption in favor of the fit parent had not been overcome. Opinion, ¶ 16.

¶21 The District Court found that the Glueckerts have had a long term, positive relationship with M.T., and that they "are capable, loving grandparents." They reside in a "well-kept three-bedroom home and have the ability to meet M.T.G.'s needs." The court concluded that, to the extent the Glueckerts want to have "regular, unsupervised contact with M.T.G. to enhance their bond with the child[,] [t]heir position is well-reasoned and sensible." The court also found that, while the Glueckerts exercise unsupervised contact with M.T. while Thayer is home on leave, Kristin forbids such contact when Thayer is away on military service. In fact, the Glueckerts have been subjected to periods without any visitation at all with M.T.

¶22 If these findings are insufficient by themselves to rebut the presumption in favor of Kristin's desire that no unsupervised contact between Glueckerts and M.T. be permitted, then Kristin's own testimony provided the remaining clear and convincing evidence to do so, in my view. When asked under cross examination if M.T.'s visits with Glueckerts, as limited and supervised by Kristin and admittedly strained by the logistics she imposed, were in M.T.'s best interests, Kristin answered "Maybe not right now," thereby acknowledging that such arrangements were not in M.T.'s best interest. When asked how such visits could be good for M.T., Kristin's answer was "Well, that's my right." I would conclude on this record that the presumption in favor of Kristin's wishes

9

was overcome by the totality of the evidence—a conclusion that Kristin's testimony virtually acknowledges.

¶23 That is not to say that the specific relief sought by the Glueckerts should be granted. Their request for multiple, multi-hour weekly unsupervised visits with M.T. may well be overreaching. However, my point is that, because I believe the Glueckerts rebutted the presumption by clear and convincing evidence, they were entitled to have the visitation issue subjected to a best interest determination by the District Court that would have set an appropriate schedule. The District Court reasoned that "[i]t is not the role of this Court to establish a set visitation schedule for grandparents on the basis that it believes regularly scheduled, unsupervised contact would be superior to the contact allowed by a fit parent," but, assuming the presumption is overcome, that is the court's duty. I would remand for consideration of that issue.


/S/ JIM RICE

10