FILED

04/01/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0323

DA 24-0323

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 63

MUSSELSHELL DITCH COMPANY,

Plaintiff and Appellee,

v.

JD BAR D, LLC, JAMES D. HARRIS
and JODY WACKER,

Defendants, Counterclaimants and Appellants.

APPEAL FROM:   District Court of the Fourteenth Judicial District,
In and For the County of Musselshell, Cause No. DV-20-85
Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Mark D. Parker, Geoffrey T. Cunningham, Parker, Heitz & Cosgrove,
PLLC, Billings, Montana

For Appellee:

Michelle M. Sullivan, Adrian A. Miller, Sullivan Miller Law PLLC,
Billings, Montana

Ariel Overstreet-Adkins, Bluebird Law, Billings, Montana

Submitted on Briefs:  January 30, 2025
Decided:  April 1, 2025

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 JD Bar D, LLC and its shareholders, James D. Harris and Jody Wacker (collectively, JD Bar D), appeal an entry of judgment from Montana's Fourteenth Judicial District Court ordering them to remove structures they constructed in and around an irrigation ditch maintained by easement holder Musselshell Ditch Company (MDC) and awarding MDC attorneys' fees.

¶2 We address the following issue on appeal:

*Did the District Court err when it concluded JD Bar D had unreasonably interfered with MDC's easement rights, in violation of § 70-17-112, MCA?*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 MDC owns, operates, and controls the Musselshell Ditch canal system (Ditch). JD Bar D owns and operates a ranch located in Musselshell County whose predecessor in interest granted an easement to MDC "for the exclusive use of the Grantee . . . [including] its successors and assigns forever" to access a portion of the Ditch that crosses JD Bar D's real property (Easement). The granting language further stated the Easement was "for the operation and maintenance of the canal and shall not be an easement for use by the general public." The Easement was recorded in 2005. Both MDC and JD Bar D have established rights to the water flowing through the Ditch dating back to 1891 and 1904, respectively. According to a 1932 decree, MDC must operate in recognition of and accommodate JD Bar D's use of the Ditch for its water right claim.

2

¶4      Between 2014 and 2017, JD Bar D sought and received permission from MDC to complete several projects on JD Bar D's property that impacted or had the potential to impact MDC and its shareholders.  But, in the spring of 2017, JD Bar D began installing additional structures in and around the Ditch without MDC's permission.  From 2017 to 2019, JD Bar D installed a wooden bridge, a cement pump box, a water pump, electrical conduit, and a buried pipeline, all of which were met with opposition from MDC.  JD Bar D refused to remove any of these structures and, instead, started irrigating prepared ground with water drawn from the Ditch by their pump in August of 2020.

¶5      On October 26, 2020, MDC filed a complaint against JD Bar D, alleging violations of § 70-17-112, MCA, and seeking injunctive relief and a declaratory judgment.  With its answer, JD Bar D asserted a counterclaim that claimed JD Bar D had established a prescriptive easement to use the Ditch.  MDC filed an answer denying JD Bar D's counterclaims and, in August of 2021, moved for partial summary judgment.  Before the District Court ruled on MDC's motion, the parties jointly moved to vacate the pretrial conference and trial and requested the District Court decide the matter on the record.[1]

¶6      The District Court issued its Findings of Fact, Conclusions of Law, and Order on May 3, 2024.  In its listing of undisputed facts, the District Court noted: "JD Bar D provided no factual support for its prescriptive easement claim in the summary judgment briefing or anywhere else in the record."  Additionally, the District Court drew from the record that

---

[1] The record before the District Court included "the parties' submissions on MDC's motion for partial summary judgment, and any supplemental deposition excerpts and deposition exhibits provided to the Court."

the cement pump box, water pump, electric conduit, and buried pipeline were all "permanent" and that the bridge was "more temporary in nature," although it still required advanced notice and the use of heavy equipment to move. The District Court found these structures, both permanent and temporary, "render[ed] maintenance of the ditch more inconvenient than maintenance prior to their installation," and specifically pointed out an electrocution hazard posed by the conduit running across the Ditch above the waterline. The District Court stated that JD Bar D's water rights do not "give JD Bar D unlimited rights to construct new works that encroach upon MDC's Easement absent MDC's permission," noting MDC held both the express Easement from JD Bar D's predecessor in interest, as well as secondary easement rights under § 70-17-112, MCA. Relying on this Court's decision in *Musselshell Ranch Co. v. Seidel-Joukova*, 2011 MT 217, 362 Mont. 1, 261 P.3d 570, the District Court ruled that the installation of permanent structures and other obstacles preventing MDC from safely conducting maintenance of the Ditch was unreasonable.

¶7 JD Bar D was ordered to remove the cement pump box, water pump, pipeline, electrical conduit, and wooden bridge, and to pay approximately $40,000 in attorneys' fees for interfering with MDC's easement by "forcing it to defend its rights in court." The District Court dismissed MDC's preliminary injunction claim as moot upon final adjudication. JD Bar D appeals.

## STANDARD OF REVIEW

¶8      In reviewing a district court's declaratory judgment on an easement, we "look to whether the [d]istrict [c]ourt's factual findings were 'clearly erroneous.'" *Bardos v. Spoklie*, 2024 MT 274, ¶ 8, 419 Mont. 122, 558 P.3d 1176 (quoting *Thibodeau v. Bechtold*, 2008 MT 412, ¶ 14, 347 Mont. 277, 198 P.3d 785).  A factual finding is clearly erroneous if it is not supported by substantial credible evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made.  *Bardos*, ¶ 8 (citing *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, 114 P.3d 254).  Substantial credible evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Cremer Rodeo Land & Livestock Co. v. McMullen*, 2023 MT 117, ¶ 35, 412 Mont. 471, 531 P.3d 566.  When determining whether the district court's findings are supported by substantial credible evidence, we "'view the district court's findings of fact in the light most favorable to the prevailing party.'" *Faber v. Raty*, 2023 MT 227, ¶ 15, 414 Mont. 144, 539 P.3d 1096 (quoting *Lyndes v. Green*, 2014 MT 110, ¶ 15, 374 Mont. 510, 325 P.3d 1225).  A district court's conclusions of law, including interpretation of statutes, are reviewed de novo for correctness.  *State v. Damon*, 2025 MT 12, ¶ 6, 420 Mont. 225, 562 P.3d 1061.

## DISCUSSION

¶9      JD Bar D argues that the rights afforded to MDC under § 70-17-112, MCA, must be balanced with its water and property rights and that the District Court's failure to consider JD Bar D's rights to utilize water in a reasonable manner constitutes reversible

error.  JD Bar D also claims the District Court improperly relied on the absence of permission in determining the reasonableness of its structures on MDC's Easement, and that these encroachments did not unreasonably interfere with MDC's easement rights.  In response, MDC argues that "water rights are not ditch rights," and that, by proceeding to erect structures within and around the Ditch without MDC's permission, JD Bar D was subject to the District Court's determination of whether its actions were reasonable under the law.

¶10	An easement is a non-possessory interest in another's land to use the land for a specific purpose.  *Bardos*, ¶ 8.  "'The land to which an easement is attached is called the dominant tenement.  The land upon which a burden or servitude is held is called the servient tenement.'"  *Oberlander v. Hennequin*, 2023 MT 45, ¶ 20, 411 Mont. 320, 525 P.3d 1176 (quoting § 70-17-103, MCA).  This Court has "'recognized the creation of easements by express grant, reservation, exception or covenant; by implication from necessity or a prior existing use; and by prescription.'"  *Wilkinson, LLC v. Scott & Cindy Erler, LLP*, 2021 MT 177, ¶ 9, 404 Mont. 541, 491 P.3d 704 (quoting *Blazer v. Wall*, 2008 MT 145, ¶ 26, 343 Mont. 173, 183 P.3d 84).  The scope of an express easement is "informed by the language of the easement grant."  *Bardos*, ¶ 11.  Prescriptive easements are attained through the open, notorious, adverse, and continuous use of another's property for a five-year period. *Frisk v. Thomas*, 2024 MT 156, ¶ 11, 417 Mont. 277, 553 P.3d 350 (citing *Cremer Rodeo*, ¶ 37).

¶11 Here, the District Court found that JD Bar D failed to support its prescriptive easement counterclaim with credible evidence. Nowhere on appeal does JD Bar D assert this finding was erroneous. JD Bar D argued before the District Court that the Easement conveyed to MDC by its predecessor in interest was not "exclusive." Yet, the plain language of the easement grant states it "shall be for the exclusive use of the Grantee herein, its successors and assigns forever, for the operation and maintenance of the canal and shall not be an easement for use by the general public." Where an easement's terms are specific with respect to the result of the grant, the grant "'is decisive of the limits of the easement,'" and the judiciary must decline to modify its language. *Archer v. Tait*, 2024 MT 322, ¶ 10, 420 Mont. 68, 561 P.3d 988 (quoting *Titeca v. State*, 194 Mont. 209, 214, 634 P.2d 1156, 1159 (1981)). Thus, the District Court correctly determined the Easement was exclusive.

¶12 We agree with JD Bar D that MDC's rights as a ditch owner and easement holder must be balanced with JD Bar D's rights as a landowner who relies on the Ditch for irrigation. However, as noted by MDC, JD Bar D's property rights are not the same as its water rights. *See Little Big Warm Ranch, LLC v. Doll*, 2018 MT 300, ¶ 12, 393 Mont. 435, 431 P.3d 342 ("[w]ater rights are often appurtenant to the land on which they are used"). Thus, the District Court's refusal to consider JD Bar D's "right to utilize water in a reasonable manner" did not constitute reversible error. On appeal, we address the balancing of the parties' property rights and decline to discuss water rights except to note that, pursuant to the 1932 decree, MDC must operate in recognition of and accommodate JD Bar D's use of the Ditch for its water right claim. There is no evidence in the record to

suggest MDC is in violation of the 1932 decree. In fact, MDC offers evidence that JD Bar D is "not without a method to extract water out of the [D]itch at the same location where the permanent pump was installed."

¶13    In 1981, the Legislature recognized the common law principle known as a "secondary easement," whereby the grantee of a ditch easement (i.e., the dominant tenement holder) has the right to enter upon the servient tenement to maintain the ditch. *Musselshell Ranch*, ¶ 13; § 70-17-112, MCA. Section 70-17-112, MCA, provides:

(1) A person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch or to operate the appropriation works.
(2) A person may not encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.
(3) The provisions of subsection (2) do not apply if the holder of the canal or ditch easement consents in writing to the encroachment or impairment.
(4) Each canal or ditch easement obtained by prescription or conveyance is included within the scope of this section. . . .
(5) If a legal action is brought to enforce the provisions of this section, the prevailing party is entitled to costs and reasonable attorney fees.

In 2011, this Court addressed a dispute pertaining to the same canal system at issue here, wherein we interpreted this exact statute and determined secondary easement rights under § 70-17-112, MCA, must be balanced with the property rights of servient tenement holders. *Musselshell Ranch*, ¶ 18. This balancing test hinges on "reasonableness" such that "secondary easement rights must be exercised in [] a reasonable manner as not to needlessly increase the burden upon or do unnecessary injury to the servient estate." *Musselshell Ranch*, ¶ 18 (internal quotations and citations omitted). Thus, what may be considered reasonable must be determined "'in light of the situation of the property and

8

the surrounding circumstances.'" *Musselshell Ranch*, ¶ 20 (quoting *Gabriel v. Wood*, 261 Mont. 170, 176, 862 P.2d 42, 46 (1993)). We stated that, "the servient owner's actions cannot make the easement more inconvenient, costly, or hazardous to use," and "[f]orcing the dominant owner to defend an easement right in court also may constitute unreasonable interference with the right." *Musselshell Ranch*, ¶¶ 20, 23 (quotations and citations omitted). For a general rule, we stated: "'If the improvement is temporary and easily removed, it is generally not unreasonable. The more expensive the improvement or the more difficult its removal is likely to be, the more likely is the conclusion that the improvement is an unreasonable interference with the easement.'" *Musselshell Ranch*, ¶ 26 (quoting Restatement (Third) of Property: Servitudes § 4.9 (Am. L. Inst. 2000)). On facts substantially similar to the case at bar, we reversed the District Court's declaratory judgement in favor of the servient tenement holder and concluded the "placement of [a] permanent, irremovable culvert and rock bridge" in a ditch co-owned by Musselshell Ranch Company unreasonably encroached upon the "normal, historic use of that portion of the secondary easement" in violation of § 70-17-112, MCA. *Musselshell Ranch*, ¶ 30. We nonetheless recognized that "[t]he particular facts of a situation are always controlling, and what is reasonable or unreasonable is often a close call." *Musselshell Ranch*, ¶ 27.

¶14 Reviewing all facts in the light most favorable to MDC, we conclude the District Court's findings were not clearly erroneous and were, instead, supported by substantial credible evidence. It is undisputed MDC owns and operates the canal system, including the Ditch, and has historically maintained the Ditch. The evidence unequivocally supports

9

the finding that MDC was granted a specific, express Easement for the purpose of maintaining the Ditch in perpetuity, giving MDC the right to "enter, inspect, repair, and maintain" the Ditch without unreasonable interference. *See* § 70-17-112(1), MCA.[2] It is also undisputed that JD Bar D had previously sought permission to encroach upon MDC's Easement, but that JD Bar D did not seek or obtain permission from MDC to place the wooden bridge, cement pump box, water pump, electrical conduit, and pipeline in or near the Ditch. In fact, JD Bar D was well aware MDC objected to the placement of these structures within the bounds of its Easement, but JD Bar D did not remove the structures.

¶15 Because the District Court is in the best position to weigh the credibility of testimony and proffered evidence, "we afford the district court's resolution of factual issues great deference." *Tafelski v. Johnson*, 2024 MT 143, ¶ 22, 417 Mont. 160, 552 P.3d 40. Here, the District Court had for its consideration substantial credible evidence, including photographs of the structures erected by JD Bar D and deposition testimony in which an MDC shareholder testified that MDC members or hired contractors would need to "get around" the pump structure in order to maintain the Ditch and that doing so would be "an

---

[2] Prior to § 70-17-112, MCA, becoming effective in 1981, secondary easement rights for ditch owners were well-established within common law. *See Laden v. Atkeson*, 112 Mont. 302, 306, 116 P.2d 881, 883 (1941) (secondary easement rights "are founded on the maxim of the law, that when the use of a thing is granted, everything is granted by which the grantee may reasonably enjoy such use, that is, rights that are incident to something else granted—here to water and ditch rights"); *Harrer v. N. Pac. Ry. Co.*, 147 Mont. 130, 137, 410 P.2d 713, 716-17 (1966) ("[w]here a permanent easement has once been acquired over the lands of another, and the ditch or canal has once been constructed, the owner of the primary easement has the right, as a secondary easement, to go upon the lands and remove obstructions from the ditch, or to make other repairs necessary, consistent with the full enjoyment of the easement") (quotation and citation omitted); *see also Musselshell Ranch*, ¶ 13.

inconvenience" that might be manageable "unless something—somebody makes a mistake." These facts were adequate to support the District Court's finding that the structures, particularly the electrical conduit suspended above the Ditch's waterline, posed a "potential electrocution [hazard]" and that "those making repairs would have to exercise extra care to avoid damaging [JD Bar D's] pipeline buried within." Given the substantial credible evidence in the record before it, we are not convinced the District Court misapprehended the evidence in this case or mistakenly interpreted facts as to require reversal.

¶16 The District Court likewise did not err by concluding JD Bar D unreasonably interfered with MDC's easement rights, in violation of § 70-17-112, MCA. The District Court applied the "reasonableness" standard described in *Musselshell Ranch* and restated this Court's holding: "In other words, while a servient owner is entitled to use the servient land, the owner may not unreasonably interfere with the easement holder's enjoyment of the servitude. . . . Such is true irrespective of whether the encroachment is temporary or permanent." The District Court then engaged the facts and reasoned that, much like the servient owner's actions in *Musselshell Ranch*, JD Bar D's structures created permanent, immovable, hazardous, and inconvenient encroachments within the Ditch and "normal, historic use of that portion of the secondary easement." *Musselshell Ranch*, ¶¶ 20-30. To the extent the wooden bridge was "temporary in nature," the District Court concluded, based on testimony, that the bridge was an inconvenience and would require MDC "to exit and re-enter the Ditch at one point along the maintenance route," which this Court

11

determined is an unreasonable interference with secondary easement rights. *Musselshell Ranch*, ¶ 29 ("if every landowner whose property is encumbered by a ditch easement placed culverts in the ditch, it is obvious the ditch owner's ability to exercise their secondary easement rights to maintain the ditch would be seriously impaired"). The District Court also correctly recognized that forcing MDC to defend its easement rights constituted a violation of § 70-17-112, MCA. *Musselshell Ranch*, ¶ 23. Thus, the same rationale in which we grounded our reversal of the District Court's judgment in *Musselshell Ranch* supports affirming the District Court here.

¶17 JD Bar D further argues the District Court improperly relied on its lack of permission from MDC in determining the reasonableness of encroachments. Indeed, JD Bar D correctly states there is "no legal requirement to receive prior permission" before installing encroachments on the Ditch. However, § 70-17-112(3), MCA, specifically excludes an encroachment to which "the holder of the canal or ditch easement consents in writing" from being deemed an impermissible "interference" with the easement holder's secondary rights. Due to this statutory provision, it was entirely necessary for the District Court to consider and make a factual finding as to whether JD Bar D had written permission from MDC to place the structures in and around the Ditch. As MDC observes, if JD Bar D had obtained permission for its actions (like it had prior to 2017), "this case would not exist." Because § 70-17-112(3), MCA, was inapplicable, the District Court correctly focused on the unreasonableness of the encumbrances and issued its judgment accordingly.

¶18 Lastly, JD Bar D asks this Court to reverse the District Court's award of attorneys' fees to MDC. Section 70-17-112(5), MCA, entitles the prevailing party to recover attorneys' fees where "a legal action is brought to enforce the provisions of this section." Having decided MDC "prevailed on all its claims raised under Mont. Code Ann. § 70-17-112," the District Court determined that an award of attorneys' fees was necessary and proper under Montana's Uniform Declaratory Judgment Act. *See* § 27-8-313, MCA.

¶19 Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON